

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DSS
F.#2010R02036

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 7, 2011

By ECF

The Honorable Sterling Johnson, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   United States v. Syed Ali
            Criminal Docket No. 10-870 (SJ)

Dear Judge Johnson:

      The government writes in response to the defendant's sentencing memorandum, which was dated July 6, 2011 and filed today. Sentencing is scheduled for tomorrow, July 8, 2011. On January 6, 2011, the defendant pled guilty to a single-count information charging him with falsely reporting an imminent terrorist attack to the Federal Bureau of Investigation ("FBI"), in violation of 18 U.S.C. § 1001(a)(2). The defendant faces a maximum statutory term of imprisonment of five years, and an advisory Guidelines range of imprisonment of 0 to 6 months. In his letter, the defendant seeks a non-incarceratory sentence. However, for the reasons set forth below, a substantial term of imprisonment in excess of the advisory Guidelines range is appropriate.

I.   Offense Conduct

      On May 12, 2010 the defendant sent an email to the FBI stating that three individuals whom he knew were planning to commit a terrorist attack in the United States. (Presentence Investigation Report ("PSR") ¶ 2. Specifically, Ali wrote that these men were "planning on hurting our motherland" and were affiliated with an organization in Pakistan which promotes "killing all [] non Muslims." (See Defendant's Sentencing

Letter, Ex. A).  Ali further wrote that the men intended to receive training in Pakistan and then "come back and do the max damage here."  (Id.)  Ali explained that he had been tasked to deliver a letter to Pakistan for the plotters, but that he had not been permitted to read the letter.  (Id.)  Ali stated that his associates' "plans of hurting our homeland are pretty obvious" and that as soon as they finished training they intended to "implement the procedure here."  (Id.)

After sending this information to the FBI, Ali was interviewed in person by FBI agents on several occasions and reaffirmed the validity of his allegations.  (PSR ¶ 2).  In addition, both in his original email and in subsequent interviews, Ali explained that his associates intended to fund their terrorist activity with money obtained through bank fraud.  Specifically, one of the conspirators had obtained personal identifying information for victim bank account holders, and the conspirators had used that information to place unauthorized orders for checks.  (PSR ¶ 3).  The conspirators then stole the checks, made them payable to third parties, cashed the checks, and split the proceeds.  (Id.)  Although Ali initially denied any personal involvement in the fraud scheme, he later admitted that he had deposited several fraudulent checks worth more than $10,000.  (PSR ¶ 8).  Altogether, the bank fraud scheme resulted in a total loss of approximately $600,000. (PSR ¶ 3).

For several months after falsely reporting that his associates were planning to commit a terrorist attack within the United States, Ali continued to insist that the information he had provided to the FBI was accurate.  In October 2010, Ali reported that one of the conspirators intended to travel to Pakistan shortly to receive final training to initiate the plot.  (PSR ¶ 5).  Thereafter, Ali wore recording devices at the direction of FBI agents to gather additional evidence regarding this purported threat.

On October 9, 2010, Ali was administered a polygraph examination by the FBI.  (PSR ¶ 6).  Ali flunked the polygraph, but continued to maintain that he had been completely truthful.  Finally, on October 14, 2010, Ali was given Miranda warnings and re-interviewed.  After insisting for hours that he had provided accurate information regarding the terrorist plot, Ali ultimately confessed that he had completely fabricated the purported plot and had deliberately misled the FBI.  (PSR ¶ 7).  Ali also signed a written statement explaining that he had lied to get one of the purported plotters "in trouble" due to a conflict with that person over "religious beliefs."  (PSR ¶ 8).  Altogether, the FBI spent dozens of man-hours worth approximately $1,000,000

investigating Ali's false claims.  (PSR ¶ 7).

II.  The Appropriate Sentence

The defendant seeks a non-incarceratory sentence primarily because his crime was the result of "foolishness and immaturity" (Def. Ltr at 1) rather than malice, and because he truthfully reported that he and his associates were engaged in a bank fraud scheme.  In addition, Ali asserts that his family circumstances warrant leniency, and argues that the substantial government resources wasted as a result of his offense should not result in enhanced punishment for him.

Ali now claims that, despite his prior admission that he had fabricated the terrorist plot due to a personal dispute with one of the purported plotters, he actually concocted the threat to impress the FBI with his prowess as an "undercover agent."  (Def. Ltr at 2).  However, it defies reason to suggest that Ali repeatedly and deliberately lied to FBI agents over the course of five months in order to curry favor with them.  It is impossible to know Ali's true motivation for committing this serious crime, and any post-hoc explanations offered by defense counsel should be rejected.

In addition, Ali's involvement in the bank fraud scheme (which he initially denied) should aggravate, rather than mitigate, his punishment.  Ali's advisory Guidelines range does not account for his participation in that offense.  While it is correct that one of Ali's co-conspirators in that scheme was successfully prosecuted, see United States v. Soban Naseer, 11 Cr. 082 (KAM),[1] Ali's punishment should not be mitigated as a result of that prosecution.  Although information provided by Ali first alerted the FBI to the fraud, Ali's repeated lies to the FBI rendered him useless as a witness for the government.  Thus, Ali should not receive any reduction in sentence as a result of Naseer's conviction.

Ali further claims that he is the sole means of support for his wife and young child in Pakistan.[2]  Ali married his wife in March 2010 and has never resided with her.  (PSR ¶ 30).  The

---

[1] On February 9, 2011, Naseer pled guilty to conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349.  He is currently awaiting sentencing.

[2] Notably, the PSR states that Ali's marriage "has not been consummated."

PSR also states that Ali's wife resides with her elder brother, who presumably is an alternate means of support. (<u>Id.</u>) In any case, Ali himself has little income, having reported only $950 in income in 2010. (PSR Addendum). Indeed, Ali reported that he currently receives $200 per month in financial assistance from his father, which would largely offset the $300 per month that he claims to provide to his wife. (PSR ¶ 61).

   In any event, Title 18, United States Code, Section 3553(a)(2) mandates that a sentence must "reflect the seriousness of the offense" and "provide adequate deterrence to criminal conduct[.]" Ali claims that his lies were "vague and amateurish" (Def. Ltr. at 5) and that the FBI should have quickly disregarded the information he provided rather than thoroughly investigating. In essence, Ali attempts to blame the FBI for taking the information he provided about an imminent terrorist attack seriously. Unfortunately, law enforcement agents do not have the luxury of disregarding information they receive regarding imminent terrorist threats to the United States. Information such as that which Ali fabricated must be quickly and thoroughly investigated. In this case, Ali's deliberate and repeated lies occupied dozens of agents and other law enforcement officials for weeks and wasted substantial government resources. His advisory Guidelines range does not account for this serious harm caused by his offense. Therefore, a sentence in excess of that range is warranted.

III. <u>Conclusion</u>

   For the reasons set forth above, the government maintains that the Court should reject Ali's request for a non-incarceratory sentence and impose a substantial term of incarceration in excess of the advisory Guidelines range.

              Respectfully submitted,

              LORETTA E. LYNCH
              United States Attorney

          By: <u>/s/ Daniel S. Silver</u>
             Daniel S. Silver
             Assistant U.S. Attorney
             (718) 254-6034

cc: Clerk of the Court (SJ) (By ECF)
   Kannan Sundaram, Esq. (By ECF)